Christy Leanne Callahan
PO Box 461
Waycross, GA 31502-0461
(912) 388-1898

FILED
U.S. DISTRICT COURT,
BRUNSWICK DIV.

2022 JAN 21 A 10: 19

CLERK_____
SO. DIST. OF GA.

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GEORGIA

Christy Leanne Callahan,

          Plaintiff,

v.

Texas Department of Child Protection,
The State of Texas,
David Shearer,
Wendy Shearer

          Defendant(s).

CASE NUMBER:  **CV522-005**

**CIVIL RIGHTS COMPLAINT**

### Jurisdiction

    This Court has jurisdiction over this matter pursuant to Americans with Disabilities Act (ADA); United States Constitution 14th Amendment, Due Process Clause §§ 42 U.S. Code § 1983, 42 U.S.C. § 12101. U.S. Const. amend. XIV, § 2. The Plaintiff is a resident of Waycross, Ware County, GA, and a citizen of the United States. The Defendants are the Texas Department of Child Protection and the State of Texas; Defendant David Shearer is a citizen of Texas, 1106 Van Zandt County Rd. 4310, Ben Wheeler, TX 75754, 1(903)804-9895, trainerdms@yahoo.com; Defendant Wendy Shearer is a citizen of Texas, 1106 Van Zandt County Rd. 4310, Ben Wheeler, TX 75754, 1(903)804-9896, ws110610@yahoo.com.

    The Court has jurisdiction as there is diversity of citizenship between the parties.

### Complaint

    1. The Plaintiff is a victim of discrimination against a disabled person by the Texas Department of Family and Protective Services (DFPS), protected against discrimination receiving government services by federal law under the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101.

11. The Plaintiff's civil and due process rights have been grossly violated by the Defendants, federal rights guaranteed under U.S. Const. amend. XIV, § 2, and such civil and due process violations of the Plaintiff's federal rights alienated the Plaintiff from her federally guaranteed rights of association with her own minor children. The children are:

N.R.S., DOB 9/xx/2006

I.M.S., DOB 3/xx/2009

A.M.S., DOB 2/xx/2012

12. The Plaintiff has a mental disability of bipolar disorder, and is protected against discrimination with government services under the Americans with Disabilities Act. Disabled adults with bipolar disorder sometimes become symptomatic of their diagnosis and have manic episodes. A manic episode is a medical condition that individuals with this disability seek medical treatment for. Individuals who have these symptoms are not automatically incompetent to parent, nor is the presentation of a manic episode evidence of risk of child abuse or harm.

2. In 2013, the Plaintiff suffered grotesque trauma with the death of her baby. The baby had anencephaly and was stillborn on October 4, 2013. The Plaintiff was diagnosed with her mental disability during that pregnancy, due to her child's diagnosis of anencephaly in utero.

5. The Plaintiff was diagnosed and treated for the disability during that tragic pregnancy by Lauren Guen, CNM, of Lone Star Midwives. As a mandatory reporter of suspected child abuse and neglect under Texas law, Ms. Guen did not find any deficiencies or risks in parenting this mental disability might cause her three minor children.

6. The minor children had a pediatrician at that time, Dr. Olutola Adetona of Practical Approach Pediatrics and Pediatric Dentistry. As a mandatory reporter under of child abuse and neglect under Texas law, Dr. Adetona did not evaluate the Plaintiff as an unfit mother in 2013, or any time prior or after, nor did this mandatory reporter suspect any abuse or neglect of the Plaintiff's minor children by the Plaintiff.

7. During the Plaintiff's divorce proceedings in the summer of 2013, while she was symptomatic of her disability, the Plaintiff's husband of that divorce, Aaron Michael Shearer, moved back into the Plaintiff's residence.

8. A report was made to the Texas Department of Family and Protective Services (DFPS), and child abuse or neglect was unsubstantiated, and the Plaintiff was vetted as a fit parent to her minor children on December 17, 2013.

9. The Plaintiff was required to remove Aaron Michael Shearer from her residence as a condition for the Texas Department of Family and Protective Services (DFPS) to end involvement with the Plaintiff's family. Aaron Michael Shearer was considered a risk to the Plaintiff and her children during that investigation into the Plaintiff's family by DFPS. The Plaintiff is a survivor of domestic abuse from that marriage.

10. On December 28, 2013, the Plaintiff was highly symptomatic of her newly diagnosed mental disability and was admitted to Baptist Medical Center in downtown San Antonio for emergency treatment. During this medical treatment for the Plaintiff's disability in December 2013, DFPS became involved with the family and initiated a dependency with the Plaintiff's minor children and took temporary custody.

13. The Plaintiff has photographic evidence showing the residence to be clean, and the children well-groomed and properly cared for, at the time of the Plaintiff's hospitalization on December 28, 2013.

14. The Plaintiff was vetted as a safe and fit parent prior to her hospitalization. An emergency hospitalization for a medical condition is not the basis for terminating a parent's federally guaranteed rights of association with their children.

15. No substantive evidence existed in January 2014 to justify a removal of the children permanently from the Plaintiff's care, and the dependency that ensued was based on the Plaintiff's disability and is, therefore, discrimination against a person with disabilities, protected against discrimination under the Americans with Disabilities Act.

16. Although the Plaintiff was vetted as a safe and fit parent on December 17, 2013, and no suspicions of neglect was reported by the Plaintiff's nurse-midwife, obstetrician, nor the pediatrician for the Plaintiff's children, a safety placement of the Plaintiff's children was made, at the Family Team Meeting on January 8, 2014. The children were removed from the Plaintiff and placed with the father and stepmother of her ex-husband, the family of the man who perpetrated domestic abuse against the Plaintiff, David and Wendy Shearer.

17. The Plaintiff's children reported verbal and physical abuse by Aaron Michael Shearer, the ex-husband, at the time of the DFPS investigation in 2014. The children were placed with the family of her domestic abuser.

18. In a February 22, 2014, temporary order, a conservatorship was created, giving the family of the Plaintiff's ex-husband, Aaron Michael Shearer, custodial rights to the Plaintiff's children, in light of the placement by DFPS.

19. The Plaintiff contends the conservatorship created on February 22, 2014, was done under duress, while she was symptomatic of her disability. The Plaintiff further contends that had she been provided with a special accommodation to assist during those proceedings, her federally guaranteed rights of association with her children would not have been abridged by DFPS and her ex-husband's family in these matters.

20. The Plaintiff is motioning the Supreme Court of Texas to vacate the conservatorship in 2014 as the Plaintiff was under duress and symptomatic of her psychiatric disability and not in sound mind and body during those proceedings.

21. The Plaintiff suffers from a psychiatric disability, and she was acutely symptomatic of her disability during these proceedings. The Plaintiff contends that her psychiatric disability is different from other disabilities protected under the ADA. Individuals suffering acute symptoms of a mental disability are not in a sound state of mind to request special accommodations and oftentimes, due to their specific disability, cognitively unaware such rights exist for requesting protections under the ADA, due to their disability symptoms of acute mental illness.

22. The Plaintiff contends that due to the nature of her disability as a psychiatric condition, which she was acutely symptomatic from in 2014, the Defendants, as social workers representing the Texas Department of Family and Protective Services, should have offered the Plaintiff a special accommodation afforded under the ADA, and the Defendants, as social workers breached a duty of care to the Defendant, by not informing or offering the Plaintiff those rights as a disabled respondent in a dependency action with a government agency. The Defendant's refusal to disclose the ADA rights of the Plaintiff in obtaining a special accommodation during these proceedings is a violation of the Plaintiff's due process and civil rights, a disabled respondent in those matters, mentally unaware and unable to understand such ADA protections were available at the onset of these proceedings.

23. The Plaintiff's children have never reported any neglect, abuse, or maltreatment by their mother. There has never been evidence produced by the Defendants to justify the separation of the Plaintiff and her children for the past eight years. Therefore, the dependency is non-evidentiary and a violation of the Plaintiff's civil rights.

24. The dependency was non-evidentiary, as no threshold of abuse or neglect was met by the Defendants to justify a severance of her federally guaranteed parental rights, or an alienation of the Plaintiff from her own children. The Plaintiff contends this non-evidentiary dependency is based on her disability, and she has been discriminated because of that diagnosis, and therefore a victim of discrimination by the Defendants, a government agency.

25. The Plaintiff's children are now adolescents and wish to live with their mother, a reinstatement of the Plaintiff's federally guaranteed parent-child relationship, and the Plaintiff's federally guaranteed rights to associate with her own children, and her children's rights of association with their own mother. The conduct by the Defendants violated the Plaintiff's rights of association with her offspring.

26. The Plaintiff does not have a parental relationship with her minor children, and the family of her ex-husband, David and Wendy Shearer, are denying access. This interference with the Plaintiff's rights to associate with her children is continuing to be perpetrated by the Defendants, and the Defendants violations of the Plaintiff's civil and due process rights precipitated the 2014 conservatorship that alienated the Plaintiff from her minor children.

27. Wendy Shearer, a present Joint Managing Conservator for the Plaintiff's children in this dependency, is a childless woman who has interfered with the Plaintiff's association with her children, with the intent of depriving the Plaintiff of her federally guaranteed parent-child relationship, and converting that parent-child relationship as her own.

28. The Plaintiff is a survivor of domestic abuse from her marriage with Aaron Michael Shearer. The Plaintiff's children are in the custody of David and Wendy Shearer, the family of the man who perpetrated domestic abuse upon the Plaintiff.

29. The Plaintiff is a survivor of a lifetime of narcissistic abuse by her mother, Marilyn Draper. The narcissistic abuse perpetrated by Marilyn Draper is documented in the Plaintiff's

behavioral health records and date back to her early childhood, and that abuse continues with this present conservatorship and dependency of the Plaintiff's minor children.

30. Marilyn Draper injected herself into the DFPS dependency and conservatorship, continuing a lifetime of narcissistic abuse with impeachable testimony regarding the Plaintiff as a fit parent, contradicting the medical reports of the Plaintiff as a fit and safe parent, and the non-evidentiary pleadings by the Defendants, where no evidence has ever been produced showing the Plaintiff as an abusive or neglectful parent to her minor children.

31. In a motion to the Court dated May 7, 2019, David and Wendy Shearer and Marilyn and Glen Draper gave testimony, with the same terminology, that the Plaintiff's association with her children "will significantly impair their (the Plaintiff's children) physical health and emotional wellbeing." The exact terminology from all four statements is evidence of mutually contrived testimony, testimony that does not reflect the fact that no evidence has ever been produced showing the Plaintiff had ever abused or neglected her children, and such testimony was perpetrated by a family with a past history of abuse against the Plaintiff, and the Plaintiff's mother who perpetrated a lifetime of narcissistic abuse upon the Plaintiff, and was given to the Court in order to violate the Plaintiff's federally guaranteed rights of association with her own children.

32. On a report to the Court on August 12, 2019, it was reported that the Plaintiff's doctor noted, "I have no concerns about her (the Plaintiff's) ability to care for her own children." However, in a documented instance of discrimination against a person with Plaintiff's disability, the discriminatory report to the Court included terminology, which was the basis to deny unsupervised visitation to the Plaintiff, that people with bipolar disorder "can display unpredictable anger outbursts, moodiness, and impulse control problems resulting in poor judgment or choices." This report submitted to the Court was the production of a discriminatory pleading by the Defendants, implying people with the Plaintiff's disability pose a safety risk to their children, which is a generalization that cannot be made to parents with the Plaintiff's disability. This stereotyped discriminatory pleadings prejudiced the Court to dismiss the Plaintiff's motion for unsupervised visitation with her children, this violated the Plaintiff's federally guaranteed rights of association with her children, and the Defendants' use of discriminatory pleadings with a report regarding the Plaintiff's disability as a condition to bar her rights of unsupervised visitation with her own children,

is a violation of the Plaintiff's civil rights and a violation of her ADA protected rights against discrimination by a government agency.

33. In a medical record dated February 12, 2019, the Plaintiff's physician, Dr. Harper, who has treated the Plaintiff for her disability since 2015, affirmed the Plaintiff's fitness to parent her children, with no barriers posed by her disability: "Patient comes in for follow up of Bipolar disorder. Stable with current medications. Very stable, no mood swings. Thought process logical and goal directed. Good insight and judgment. Ms Callahan is very well controlled and stable with current therapy. I have treated her since June of 2015. I have no concerns about her ability to care for her children."

34. The report submitted to the Court on August 12, 2019, was discriminatory and contradicted the physician's assessment of the Plaintiff's fitness to parent. The Defendants plead to that Court that parents who have bipolar disorder have the risk of abusing their children, which is non-evidentiary, an untrue risk of abuse generalized to all parents who have the Plaintiff's disability, and the discriminatory report was used to violate the Plaintiff's federally guaranteed rights of association with her children. The Court ruled not to allow unsupervised visitation for the Plaintiff based on her disability.

35. The Plaintiff's rights were violated by the Defendants on November 10, 2020, and she was discriminated as a disabled person, as the pleadings for unsupervised visitation with the Plaintiff and her children was denied, based on her status as a disabled person with a diagnosis of bipolar disorder. People with a psychiatric disability are not by definition abusers of children when symptomatic of their disability, and the Defendants conduct in pleadings, prejudiced the Court that her disability could pose a risk of harm and abuse, as a basis to interfere with the Plaintiff's federally guaranteed rights of association with her children, is evidence of discrimination against a person with disabilities, prohibited under the ADA.

36. The Defendants violated the Plaintiff's parenting rights to her minor children by refusing to provide medical treatment for her son who is diagnosed with Attention-Deficit Hyperactivity Disorder (ADHD). The failure by the Defendants to follow the parenting directions of the Plaintiff caused the injuries of her son's education, as the child was held back a grade by the Defendants refusal for the evaluation and treatment of his ADHD. The Plaintiff contends this is

evidence of child neglect by the Defendants interference with the Plaintiff's parenting rights to get a required medical treatment for her son who has a diagnosis of ADHD.

37. The conservatorship and the dependency litigated by the Defendants has lasted eight years. There has never been any evidence produced by the Defendants that the Plaintiff has ever been abusive, neglectful, or unfit to parent her children. This non-evidentiary intrusion of the Plaintiff's parenting rights based on her ADA protected disability is discrimination, and a violation of a parent's federally guaranteed rights of association with their own children, without government interference and intrusion.

## Demand

As a result of these several violations of the Plaintiff's federally guaranteed due process and civil rights perpetrated by the Defendants, and for the discrimination against a disabled person in government services, protected by the Americans with Disabilities Act (ADA), the Plaintiff prays for the following relief.

38. On January 13, 2022, the Plaintiff filed complaint reports with the United States Department of Justice (DOJ), Civil Rights Division, for these several violations of the Plaintiff's due process and civil rights, and for discrimination by a government agency, prohibited under the Americans with Disabilities Act. DOJ civil rights complaint reports 129008-WXB, 129010-BJT, 129011-QXG, 129013-WPM, 129016-LBP and 129020-NJF.

39. Monetary damages for violations of the Plaintiff's due process and civil rights, with discriminatory pleadings and evidence of discrimination of the Plaintiff based on her disability, during the eight years of this dependency with the Plaintiff and her minor children, robbing the parent of her natural association her own children, the Plaintiff prays for $1,800,000.00 in damages for these injuries caused by the Defendants' violations of her federal rights;

40. Tortuous interference with parental rights, tortuous interference with parental visitation, alienation of affections, and intentional infliction of emotional distress upon an individual with a mental disability, the Plaintiff prays for $780,000.00 in damages;

41. The Defendants perpetrated these several violations of due process and civil rights against a highly documented survivor of domestic abuse, the Defendants conduct is discrimination, against a disabled person in receipt of government services, protected under the Americans with

Disabilities Act (ADA), evaluated as a fit and competent parent and vetted as such by the Texas Department of Family and Protective Services immediately prior to the Plaintiff's removal of her children from her care in 2014, and this tortuous and intentional conduct by the Defendants have caused severe injuries to the Plaintiff and her children, and such injuries are expected to last a life time. Due to the egregious nature of this case and the violations to a woman with this documented history, eight years of lost association of the Plaintiff with her children by these overt acts, the Plaintiff prays to the Court for punitive damages in the amount of $2,100,000.00;

42. For compensatory and general damages in an amount according to proof;

43. For past and future psychiatric, behavioral health, and counseling services to the Plaintiff and her minor children due to the psychological damages the Defendants caused the Plaintiff and her family as a result of the Defendants' behaviors and violations of the Plaintiff's federal civil and due process rights;

44. For pre- and post-judgment interest on all damages as allowed by the law;

45. For costs of suit incurred herein;

46. For attorney fees under existing law;

47. For such other and further relief as the Court may deem just and proper.

48. Further, if it is within the jurisdiction and scope of this Court, the Plaintiff prays for a judgement vacating the Joint Managing Conservatorship of Defendants David and Wendy Shearer, and the Plaintiff's children be immediately and without condition, returned to the care and security of the Plaintiff.

49. $41,324.00 in legal fees incurred by the Plaintiff in defending this non-evidentiary dependency since 2014.

50. The total amount prayed to the Court for is $4,721,324.00. The Plaintiff wants a trial by jury.

**Damages: $4,721,324,00**

This amount of damages are outlined in this complaint with the Plaintiff's prayer for relief, and are based on the injuries and damages from eight years of alienation of the Plaintiff's affections with her children, intentional infliction of emotional distress on a disabled person and a survivor on

domestic and narcissistic abuse, injuries caused by the civil and due process violations that interfered with the Plaintiff's rights of association with her own children, and discrimination of a person with a disability, protected under the Americans with Disabilities Act. The damages all stem from eight years of alienation the Defendant's conduct caused with the parent-child relationship, and severe psychological injuries these civil and due process right violations caused to the Plaintiff and her person. The Plaintiff wants a trial by jury.

Date: 1/18/2022

Signature of Pro Se Plaintiff

Christy Leanne Callahan
PO Box 461
Waycross, GA 31502-0461
(912) 388-1898

PLEASE PRESS FIRMLY

UNITED STATES POSTAL SERVICE

For Domestic and International Use   Label 107R, May 2014

**PRIORITY MAIL**

VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLINE

FROM:
Christy Callahan
PO Box 461
Waycross, GA
31502

TO:
US District Court
Clerk
801 Gloucester St.
#222
Brunswick, GA

Label 228, March 2016   FOR DOMESTIC AND INTERNATIONAL USE

GA 31520

UNITED STATES POSTAL SERVICE   Retail

P   US POSTAGE PAID
$9.25
Origin: 76028
01/18/22
4812500328-03

PRIORITY MAIL 2-DAY®

0 Lb 1.80 Oz
1004

EXPECTED DELIVERY DAY: 01/21/22

C002

SHIP TO:
801 GLOUCESTER ST
RM 222
BRUNSWICK GA 31520-7071

USPS TRACKING #

9505 5110 0122 2018 7062 21

Please Recycle